FILED
2005 Jul-22 AM 09:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **BOMBARDIER CAPITAL, INC.,** a corporation, | ) ) ) |
| **Plaintiff,** | ) ) ) |
| v. | ) CIVIL ACTION NO. CV-05-PT-131-M ) |
| **TONY LANE, REBECCA LANE, JERRY GRAHAM, and REBA GRAHAM, individuals,** | ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff Bombardier Capital, Inc.'s Motion for Summary Judgment, filed on June 23, 2005.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Bombardier Capital, Inc. ("Bombardier") is a Massachusetts corporation with its principal place of business in Vermont. (Cmpt. ¶ 1). Defendants Tony and Rebecca Lane ("the Lanes") are residents of Gaylesville, Alabama. (*Id.* at ¶ 2). Defendants Jerry and Reba Graham ("the Grahams") are also residents of Gaylesville. (*Id.* at ¶ 3).[1]

Kellie Colburn ("Colburn"), a Recovery Specialist for Bombardier, testified that, pursuant to an Inventory Security Agreement and Power of Attorney dated June 22, 1998 ("Security Agreement"), Bombardier agreed to loan funds for the purchase of inventory to defendants, and defendants agree to repay Bombardier all advances made by the company. (Colburn Affid. ¶ 3).

---

[1] Collectively, the Lanes and the Grahams are herein referred to as "defendants."

1

The Security Agreement was signed by all four defendants.[2]

The Security Agreement states in part:

> In order to secure repayment to BCI of all extensions of credit made by BCI under this Agreement, and to secure payment of all other debts or liabilities and performance of all obligations of Dealer to BCI, whether now existing or hereafter existing, Dealer agrees that BCI shall have and hereby grants to BCI a security interest in all of the rights, titles and interests (whether now existing or hereafter arising or acquired from time to time) of the Dealer in, to and under all Inventory, including but not limited to, all goods manufactured and/or sold by any manufacturer, distributor or seller, which inventory is owned by Dealer or in which Dealer has an interest, the purchase of which was financed or floorplanned by BCI for the Dealer of whatever kind or nature, wherever located, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories and accessions thereto and thereof, and all other goods used or intend to be used in conjunction therewith and all proceeds and products thereof, and documents relating thereto (the "Collateral").

(Security Agreement ¶ 4(a)).

In addition to executing the Security Agreement, the Lanes and the Grahams also executed personal Guaranties with Bombardier on June 22, 1998. The first paragraph of the Guaranties state:

> In consideration of, and in order to induce Bombardier Capital Inc. ("BCI") to extend credit to Tony Lane, Rebecca Lane, Jerry Graham, Reba Graham ("Dealer"), the undersigned (each, any and all of whom are hereinafter called "Guarantor") guarantees full and prompt payment to BCI of all obligations of Dealer to BCI whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, which are incurred prior to the receipt by BCI of written notice of revocation of this Guaranty by Guarantor, which notice of revocation shall not affect rights acquired by BCI prior to its receipt, and the Guarantor agrees to indemnify BCI and save it harmless from and against all loss, cost, liability and expense which BCI may incur or suffer by reason of any action so taken by it. This Guaranty is one of payment and not collectability. The liability of Guarantor hereunder shall be unlimited and shall continue, regardless of the payment, reduction, creation, or any change in the amount of obligations, and this Guaranty shall not be terminated by the absence, from time to time, of

---

[2] The Security Agreement refers to Bombardier as "BCI" and defendants as "Dealer."

> indebtedness to be guaranteed hereby, but shall apply equally to new indebtedness thereafter created.

The Guaranties further state in their fifth paragraph:

> Guarantor agrees to indemnify BCI and hold BCI harmless from and against all losses and expense, including legal fees, suffered or incurred by BCI as a result of claims to compel the return of any payment received by BCI from Dealer, or transfers for BCI's account of collateral, with respect to the obligations of Dealer guaranteed herein.

According to Colburn, Bombardier advanced funds to defendants under the Security Agreement, but defendants failed to repay the loans. (Colburn Affid. ¶¶ 4-5). Colburn further stated that defendants sold Bombardier-financed inventory without remitting the proceeds to the company. (*Id.* at ¶ 5).

On February 19, 2001, defendants signed a Forbearance Agreement with Bombardier, under which they agreed that they owed $195,358.57 to the company. (Forbearance Agreement ¶ 1). The Forbearance Agreement set up a repayment schedule for the debt. (*Id.* at ¶ 5). Colburn testified that defendants have now defaulted under the Forbearance Agreement and Security Agreement, leaving a debt of $113,400.49, plus interest and costs of collection.³ (Colburn Affid. ¶ 7). Although Bombardier has demanded payment of the debt, defendants have not paid it. (*Id.* at ¶ 8).

Bombardier filed this action against the Lanes and the Grahams on January 21, 2005. The Complaint contains two counts. Count I alleges that, pursuant to defendants' default on the Security Agreement and Forbearance Agreement, they, jointly and severally, owe Bombardier

---

³ The Security Agreements provides: "Dealer further agrees to pay reasonable attorney's fees and legal expenses incurred by BCI in enforcing this Agreement after default by Dealer." (Security Agreement ¶ 8).

$113,400.49, plus interest and costs of collection, including reasonable attorneys' fees and expenses.[4] (Cmpt. ¶¶ 6-11). Count II claims that defendants are indebted to Bombardier for the same amount, in accordance with the Guaranty.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-

---

[4] According to Bombardier's Motion, it has amassed $3,692.02 in attorneys' fees and expenses, causing defendants to owe a total of $117,092.51. C. Ellis Brazeal III ("Brazeal"), attorney for Bombardier, gave the following affidavit testimony concerning legal costs and fees:

> As of June 2, 2005, a total of 9.40 hours of professional services have been rendered by attorneys in this firm[, Walston, Wells, Anderson & Birchall LLP,] and 2.00 hours of paralegal services have been rendered in connection with the collection of the debts owed by the defendants. In my opinion, these services were necessary and authorized; and, in my opinion, a reasonable fee for these services would be $2,755.00. In addition, $937.02 in expenses have been incurred in this case. These expenses include charges for photocopies, filing fees, foreclosure expenses, and postage.

(Brazeal Affid. ¶ 4).

4

moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

**ARGUMENTS**[5]

**I.     Plaintiff's Motion.**

Plaintiff argues that defendants defaulted under the Security Agreement. Plaintiff notes that the Security Agreement specifically provides that, upon default, Bombardier "can, at its option and without notice, demand immediate payment of all obligations under the [Security] Agreement . . ." (Security Agreement ¶ 8). According to plaintiff, it made such a demand, but defendants did not pay the amounts owned. Plaintiff further notes that the Security Agreement

---

[5] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

provides that defendants are "to pay reasonable attorney's fees and legal expenses incurred by [Bombardier] in enforcing [the Security] Agreement." (*Id.*)

Plaintiff points out that, in the Guaranties, defendants guaranteed "full and prompt payment to [Bombardier] of all obligations of [defendants] to [Bombardier]." The Guaranties further show that defendants agreed "to pay all of [Bombardier's] costs and expenses, including attorneys' fees and legal expenses incurred in connection with the enforcement of [the Guaranties]."

According to plaintiff, the Alabama Supreme Court has made it clear that the rules governing construction and interpretation of contracts apply to guaranties. *See Dill v. Blakeney*, 568 So.2d 774, 777 (Ala. 1990) (stating, "[i]t is generally recognized that the rules governing the construction and interpretation of contracts are applicable in interpreting or construing a guaranty contract"). Moreover, plaintiff contends, "when the terms of a contract are unambiguous, the construction of the contract and its legal effect become questions of law for the court, and when appropriate, may be decided by summary judgment." *Id.* at 777-78. Plaintiff maintains that the terms of the Guaranties are very clear, and that defendants guaranteed all obligations owed by defendants to Bombardier. Further, plaintiff asserts, they guaranteed the cost of enforcing the Guarantees.

Under the Guaranties, plaintiff concludes, defendants owe it all of defendants' obligations to Bombardier under the Security agreement. Plaintiff argues that those obligations include unpaid principal in the amount of $113,400.49, and attorneys' fees and expenses in the amount of $3,692.02. Accordingly, plaintiff states, it is entitled to summary judgment in its favor in the amount of $117,092.51.

**II.**	**Defendants' Response.**

The defendants did not respond to plaintiff's Motion for Summary Judgment.

## CONCLUSIONS  OF  THE  COURT

The court concludes that the plaintiff's Motion for Summary Judgment is due to be granted and final judgment awarded in the amount of $117,092.51

This 22nd of July, 2005.

*/s/ Robert B. Propst*
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**